Barnard, P. J.
In 1882 the defendant purchased a piece of real estate in the city of Brooklyn and took the title in his own name. During the next year he conveyed the same to his wife, without any consideration. The parties had children, and the conveyance was made in their interest. In 1885, or earlier, there came a change upon the plaintiff, not entirely explained by the evidence. She became intimate with a Mrs. Homer, and although the evidence points at no positive evil in this lady, it is very clear *517 that the plaintiff neglected her family in consequence, of the intimacy. The plaintiff left' her home “every day,” and a great portion of the time was spent at this lady’s residence, after she left the residence of the parties to this action. The plaintiff stayed out late at night, and the children were under no control and the housekeeping was neglected. She had been nervous and excitable for some two or three months before January 1, 1886, and had been under a doctor’s care. A few days before the 1st of January, 1886, she had left home, and it was not known to defendant where she was. The defendant had procured the presence of a sister of the plaintiff, who lived in Boston, in view of this condition of the household. It was supposed by the plaintiff’s son that his mother was in JSfew Jersey, but his message to her to come home, finally reached her at Mrs. Homer’s. The plaintiff had given Mrs. Homer a chattel mortgage on the furniture without any disclosed reason, and the defendant and the family were apprehensive for the land title of the property in question. .
The plaintiff returned home on January 1,1886, at about noon. The plaintiff’s sister and her husband remonstrated with her about the Homer intimacy, and told her she had better re-convey the property to her husband. The several parties here differ and this difference presents the question involved in this appeal. The plaintiff executed a deed of the property to defendant on Saturday, January 2,1886, at about half hast nine- o’ clock at night. The case of the plaintiff rests on the testimony that she remembered nothing after she retired on Saturday night until Sunday morning, the 3d of January, when the doctor was there. The servant, Miss O’ Connor, does not really aid the plaintiff in her statement. She was told at midnight that the plaintiff was sick. She found her excited and gave her brandy or whiskey to the extent of a half glass at a time, on two occasions, and left her asleep in the morming. She told her when she first saw her they would kill her, but she displayed nothing noticeable, in action or speech, during the night. The only other witness is Adams, the husband of plaintiff’s sister. He talked with his sister-in-law on Friday, chiefly as to the Homer intimacy, and on Saturday, about the transfer of the plaintiff. Adams was there acting in connection with the plaintiff’s sister and husband, and in the interest of the the family of children. His statement of the results of his efforts was conveyed in the words “when she finally gave her consent she was very weak, very nervous, and acted like any one that had been almost worried to death, and when she said yes, she threw up her hands and said, “anything, so long as you will let me •alone.” This' conversation was on the 2d of January, in *518 the afternoon, and I suppose she understood everything I said. She understood thát she was to transfer it to him for the benefit of the children. There is no other evidence. The physician establishes her general capacity, and especially on Sunday, the day after the deed was given.
The evidence for the defense is very strong. The notary who was a capable and high principled lawyer, saw nothing unusual in her condition. She knew she was to execute the paper. She was aided to raise up in her bed to do it. She signed it as I infer (the paper is not presented on appeal) in a clear manner and acknowledged the signature in the usual form, “ made a decided assent.” If deeds are of value, the evidence of the notary should be deemed conclusive, as'against the evidence of plaintiff and Adams. The testimony of the defendant, although he had but very little to do with the negotiations which preceded the deed, is important in this, that he states that Adams was the joerson who advised the transfer, “otherwise she will give it away to .those opposition people,” and he states that ■on the morning of the second of January, his wife told him that she had consented to give the deed. The evidence of Mrs. Adams seems to be candid and material. She states that she told her sister that her home was neglected and her children were neglected, and that the property had better be conveyed to the husband; she considered quite a while and at last consented. * * * I remembered her signing; I was present then, she was then very calm and mild; she had retired for the night; we were both nervous all day talking over the affairs. She did not need any propping in bed; I calmly held my hand around her, but not for support, and she signed the deed. * * * I talked with her after she executed the deed; she consented to leave Mrs. Homer, if she could see her once more. * * * I consented that she could go and see her. She came back at night very much excited and very different from when she left.” The evidence satisfies me that the conveyance was understandingly made, and should be upheld.
The judgment should be reversed and a new trial granted, costs to abide event.
Dykman and Pratt, JJ., concur.